IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

JERRY J. MATHIS,

    Plaintiff,

        v.

LARNZELL MARTIN, JR. et al.,

    Defendants.

Civil Action No. 8:13-cv-02597-AW

## **MEMORANDUM OPINION**

Pending before the Court are pro se Plaintiff's Motion for Reconsideration and Defendants' Consent Motion for Extension of Time. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **DENIES** Plaintiff's Motion for Reconsideration and **GRANTS** Defendants' Consent Motion for Extension of Time.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jerry J. Mathis brings this § 1983 action individually and as a representative of the organization Citizens for Change. Mathis is proceeding pro se. Mathis filed a Complaint against various Maryland public officials (Defendants) from each branch of government. The thrust of the Complaint is that Defendants violated Plaintiff's constitutional rights by interfering with his efforts to distribute a sample ballot in connection with the 2010 Maryland Democratic primary.

On September 7, 2010, Defendant John P. McDonough, Maryland Secretary of State, brought an action against Citizens for Change in the Circuit Court for Prince George's County

1

(the Circuit Court). McDonough contemporaneously filed an Emergency Motion for a Temporary Restraining Order and Injunctive Relief (Motion for TRO). McDonough alleged in the Motion for TRO that Maryland citizens had complained that an entity was disseminating a fraudulent sample ballot in Prince George's County in connection with the September 14, 2010 Democratic primary election. McDonough further alleged that the ballot falsely indicated that Defendant C. Anthony Muse, a Maryland State Senator, and other officials endorsed candidates for office whom they did not actually endorse. *See* Doc. No. 1-3 ¶¶ 1–4. McDonough argued that the sample ballot violated section 13-602 of the Election Law Article of the Maryland Code. In pertinent part, section 13-602 provides that "[a] person may not publish or distribute, or cause to be published or distributed, campaign material that violates § 13-401 of this title." Md. Code Ann., Elec. Law § 13-602(a)(9). In turn, section 13-401 generally requires certain campaign material to contain an authority line that is set off from any other message and that states the name and address of the person or entity responsible for distributing the material. *See* Md. Code Ann., Elec. Law § 13-401(a)(1). A hearing was held on the same day and Defendant Larnzell Martin, Jr., Associate Judge for the Circuit Court, granted the Motion. *See* Doc. No. 1-2.[1] On September 8, 2010, Judge Martin's Order dated September 7, 2010 was entered. Although public records indicate that the case is still active, the docket does not reflect that any meaningful activity has taken place since the Order was entered.

In November 2010, Defendant Douglas F. Gansler, Maryland Attorney General, filed an Information charging Plaintiff with election law violations in connection with his distribution of the sample ballot. *See* Doc. No. 1-7. In April 2011, Plaintiff was convicted of violating certain provisions of section 13-401(a)(1) of the Election Law Article. Plaintiff appealed and the

---

[1] Although Plaintiff attached Judge Martin's Order to his Complaint, the information is publicly available through the Maryland Judiciary Case Search website. *See* http://casesearch.courts.state.md.us/inquiry/processDisclaimer.jis.

Maryland Court of Special Appeals affirmed. Plaintiff filed a cert petition with the Maryland Court of Appeals, which was denied.

Plaintiff filed his Complaint on September 6, 2013. Doc. No. 1. On September 11, 2013, the Court issued an Order stating that Plaintiff bore the responsibility of effectuating service of process as he paid the filing fee when lodging his Complaint. Doc. No. 2. In said Order, the Court sua sponte dismissed Judge Martin from the suit. The Court observed that Plaintiff had sued Judge Martin in his capacity as a state court judge and ruled that he was entitled to judicial immunity. *See* Doc. No. 2 at 1 n.1 (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)).

On September 20, 2013, Plaintiff filed a Motion for Reconsideration. Plaintiff argues that the Court erred in relying on *Stump* because that case address only damages actions against judges. Plaintiff maintains that this action, by contrast, is for declaratory relief.

Plaintiff has filed returns of service for all Defendants other than Judge Martin indicating that their answers are due on October 9, 2013 or October 22, 2013. Doc. No. 5. On October 8, 2013, Defendants filed a Consent Motion for Extension of Time asking the Court to extend the deadline for all Defendants to answer or otherwise respond to November 15, 2013. Doc. No. 6.

## II. STANDARD OF REVIEW

In pertinent part, Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (stating that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Because of such discretion, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citation omitted). Nevertheless, "doctrines

such as law of the case . . . have evolved as a means of guiding" a district court's discretion to revise or reconsider interlocutory orders. *Id.* at 515 (citing *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). The law of the case doctrine dictates that courts must follow the law that a prior decision establishes unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *See Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (quoting *EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054 (5th Cir. 1980)). Albeit ubiquitous, the law of the case cannot categorically bar a district court from reconsidering an interlocutory order in light of federal courts' "ultimate responsibility . . . to reach the correct judgment under law." *Murphy Farms*, 326 F.3d at 515. Nonetheless, "concerns of finality and judicial economy" may temper this concern. *Id.* Therefore, relief is rarely ever appropriate "[w]hen the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Pritchard v. Wal Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (citation and internal quotation marks omitted).

### III. LEGAL ANALYSIS

The issue in this case is whether the Court erred in sua sponte dismissing Judge Martin. For the following reasons, the Court concludes that (1) it had the authority to dismiss Judge Martin sua sponte and (2) Plaintiff's declaratory judgment claim against Judge Martin is frivolous.

Federal courts have inherent power to dismiss, sua sponte, frivolous or malicious actions. *See Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (citations omitted); *cf. Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 308 (1989). Likewise, federal courts

have inherent power to strike frivolous motions. *See id.*; *cf.* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own . . . ."). Accordingly, subject to a showing of frivolity or maliciousness, the Court has inherent power to dismiss Judge Martin and deny Plaintiff's Motion for Reconsideration sua sponte.

The next question is whether Plaintiff's declaratory judgment action against Judge Martin is frivolous or malicious. "The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and . . . declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72 (1985) (citation omitted). "But . . . the declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* (citation and internal quotation marks omitted). "The propriety of issuing a declaratory judgment may depend upon equitable considerations, . . . and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (citations and internal quotation marks omitted).

The Fourth Circuit has distilled the principles governing declaratory judgment actions. "'[A] federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.'" *Senior Execs. Ass'n v. United States*, Civil Action No. 8:12–cv–02297–AW, 2013 WL 1316333,

5

at *21 (D. Md. Mar. 27, 2013) (quoting *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004)).

Special rules apply when litigants bring declaratory judgment actions during the pendency of parallel state proceedings. To determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending, the Fourth Circuit has focused on four factors: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping. *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006). "This less demanding standard reflects the distinct features of the Declaratory Judgment Act and the greater discretion afforded federal courts in declaratory judgment actions." *See AMEX Assur. Co. v. Giordano*, Civil Action No. AW–12–cv–2640, 2013 WL 656358, at *9 (D. Md. Feb. 21, 2013) (citation omitted).

"[A] general principle of the highest importance to the proper administration of justice [is] that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump*, 435 U.S. at 355 (second alteration in original) (citation and internal quotation marks omitted). Therefore, "judges of courts of superior or general jurisdiction are not liable [in damages] for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 355–56 (citation and internal quotation marks omitted).

Although the ambit of judicial immunity is ample, it is not absolute. When stating the principles of judicial immunity, the *Stump* Court did not expressly hold that "judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts." *See Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 735 (1980). Indeed, the Supreme Court later clarified that, in appropriate cases, judicial immunity does not shield judges from injunctive or declaratory relief for acts taken in a judicial capacity. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (holding that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Pulliam* for the proposition that state judges may be liable for injunctive and declaratory relief under § 1983); *see also Allen v. Burke*, 690 F.2d 376, 378 (4th Cir. 1982) (holding, pre-*Pulliam*, that "judicial immunity does not extend to injunctive and declaratory relief under 42 U.S.C. [§] 1983").

However, a litigant can prevail in a declaratory or injunctive relief action against a judge acting in his or her judicial capacity only in circumscribed circumstances. One limiting principle is that injunctions are an improper remedy where there "is no claimed continuing violation of federal law . . . ." *Green*, 474 U.S. at 73. This principle conforms to *Pulliam*'s precise holding that "judicial immunity is not a bar to **prospective** injunctive relief against a judicial officer acting in her judicial capacity." 466 U.S. at 541–42 (emphasis added). Consistent with these principles, the Fourth Circuit has declared that "no federal court may issue a declaratory judgment on past state action, where the action complained of is past and no other relief [i.e., injunctive relief] is available." *Int'l Coal. for Religious Freedom v. Maryland*, 3 F. App'x 46, 50 (4th Cir. 2001) (alteration in original) (citing *Green*, 474 U.S. at 74). Another limiting principle is that declaratory or injunctive relief is rarely, if ever, available where the litigant is using the

federal action to relitigate the state court judge's rulings. In this vein, the United States Supreme Court has generally held that federal district courts lack jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983). Rather, the "proper method of challenging rulings or actions by the state court is . . . by appeal within the state system, and ultimately by petition to the United States Supreme Court." *Shrader v. State Sup. Ct. for W.Va. Through Each of the Five Justices*, No. 86-7694, 1987 WL 35858, at *1 (4th Cir. Feb. 5, 1987) (citing *Feldman*, 460 U.S. at 486). More basically, the Fourth Circuit has decreed that injunctive and declaratory relief are improper remedies against judicial officers where the record demonstrates that the plaintiff "is simply dissatisfied" with the judge's rulings. *Wilkins v. Rogers*, 581 F.2d 399, 405 (4th Cir. 1978).

Judged against these principles, Plaintiff's claims against Judge Martin are frivolous. Although Plaintiff does not specifically request injunctive relief, such relief would be improper due to the lack of an ongoing or imminent controversy between him and Judge Martin. Judge Martin issued the Order in question over three years ago and, although the state case appears to still be active, it does not appear that any meaningful activity has taken place since that time. Had Plaintiff wanted to challenge Judge Martin's Order, he presumably could have taken an interlocutory appeal. *See* Md. Code Ann., Cts. & Jud. Proc. § 12-303(3), (i) (generally authorizing parties in civil cases to appeal from interlocutory orders granting or dissolving an injunction); *see also Evans v. State*, 914 A.2d 25, 67 (Md. 2006) ("Because a temporary restraining order is in the nature of an injunction, such an appeal, though from an interlocutory order, is permitted under [section 12-303(3)]."). And, while Plaintiff seems to allege that the hearing on McDonough's Motion for TRO was held ex parte, Plaintiff acknowledges that he

eventually received notice of Judge Martin's Order granting the Motion. Nor has Plaintiff adequately alleged that he is in "any real and immediate danger of sustaining some direct injury as a result of the possibility that Judge [Martin] might, at some future time, hear some case to which he was a party and be biased against him." *Brown v. Strickland*, No. 89-2729, 1989 WL 141684, at *1 (4th Cir. Nov. 16, 1989) (citations and internal quotation marks omitted). Although Plaintiff alleges that Judge Martin is biased in favor of the other Defendants, Plaintiff's allegations are speculative. And, assuming arguendo that Judge Martin were biased, there is no indication that Judge Martin might hear a case against Plaintiff and display such bias in the foreseeable future.

Nor could Plaintiff avail himself of declaratory relief per se against Judge Martin. As noted, federal courts usually may not issue a declaratory judgment on past state action where injunctive relief is unavailable. Furthermore, Plaintiff is using this action to relitigate and/or express his dissatisfaction with Judge Martin's Order. Plaintiff has not explained why he failed to appear in the state court suit and contest the Order. Moreover, the Order was entered over three years ago and public records reflect that no meaningful activity has taken place in the case since then. Therefore, although the Order does not appear to be a final judgment per se, it has a comparable effect. Hence, in light of *Feldman*, one could question whether the Court even has jurisdiction to hear Plaintiff's declaratory judgment action against Judge Martin. To the extent the Court has jurisdiction, the Court would abuse its discretion by exercising it given that the state suit is still active. McDonough brought the state suit under Maryland law exclusively; the operative facts of the state and federal actions are identical; and the record reflects that Plaintiff commenced this case in federal court to shop for a more favorable forum.

For these reasons, Plaintiff's declaratory judgment claim against Judge Martin is frivolous. There is no live, imminent, or real dispute between the Parties. One must question whether the Court has jurisdiction over the claim. Even if the Court has jurisdiction, exercising it would be an abuse of discretion. Furthermore, the immunity principles governing official-capacity suits against judges would dictate dismissal of Plaintiff's claim against Judge Martin irrespective of its label. Accordingly, the Court stands by its decision to dismiss Judge Martin from the suit sua sponte.[2]

## IV. CONCLUSION

In view of the foregoing, the Court **DENIES** Plaintiff's Motion for Reconsideration and **GRANTS** Defendants' Consent Motion for Extension of Time.

| October 11, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |

---

[2] The Court also grants Defendants' Consent Motion for Extension of Time.